UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ABRAHAM ISRAEL,

                        Plaintiff,

v.                                                          5:15-CV-0534
                                                                      (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

ABRAHAM ISRAEL
Plaintiff, *Pro Se*
2006 West Genesee Street, Apartment 11
Syracuse, NY 13219

U.S. SOCIAL SECURITY ADMIN.          AMANDA J. LOCKSHIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL       ELIZABETH D. ROTHSTEIN, ESQ.
– REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Abraham Israel ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos.18, 25, 27.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for remand for further administrative proceedings is granted.

1

I.      **RELEVANT BACKGROUND**

    A.      **Factual Background**

Plaintiff completed at least four years of college, and has past work as a fast food worker, a home health aide, a mental health aide, and a driver. (T. 7, 12.)[1] Generally, Plaintiff's disability consists of low back injury (including an annular tear at L3-4, and a large central disc herniation at L4-5 encroaching on the thecal sac and causing moderate bony stenosis and radiculopathy in the right leg), injuries to the right knee and right foot, obesity, and depression. (T. 128, 443); (Dkt. No. 18, at 2, 1-3 [Pl.'s Mem. of Law].)

    B.      **Procedural History**

        i.      **Plaintiff's Application of June 16, 2008**

On June 16, 2008, Plaintiff applied for a period of disability and Disability Insurance Benefits, alleging disability beginning January 28, 2007 ("First Application"). (T. 22, 440.) Plaintiff's First Application was initially denied on September 8, 2008, and upon reconsideration on September 18, 2008. (*Id.*) Subsequently, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On March 8, 2010, Plaintiff appeared in a hearing before ALJ Scott C. Firestone. (T. 35-70.) On April 9, 2010, ALJ Firestone issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 18-33.) On March 3, 2011, the Appeals Council denied Plaintiff's request for review. (T. 10-15.)

Thereafter, Plaintiff filed a civil action in the United States District Court for the Northern District of New York. (T. 440,) On October 19, 2011, the District Court remanded the case for further administrative proceedings. (*Id.*) On November 27, 2012, the Appeals Council

---

[1]      Page citations refer to the page numbers used on CM/ECF rather than the page numbers contained in the parties' respective motion papers.

vacated ALJ Firestone's decision of April 9, 2010, and remanded the matter for further administrative proceedings (Appeals Council's "First Remand Order"). (*Id*.)

### ii. Plaintiff's Application of May 10, 2011

On May 10, 2011, while Plaintiff's First Application was pending in the United States District Court for the Northern District of New York, Plaintiff applied for a period of disability and Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning on January 28, 2007 ("Second Application"). (*Id.*) Plaintiff's Second Application was initially denied on September 19, 2011, after which Plaintiff timely requested a hearing before an ALJ. (*Id.*) On July 30, 2012, Plaintiff appeared in a hearing before ALJ Elizabeth W. Koennecke. (T. 527-48.) On September 24, 2012, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 508-26.) On July 1, 2013, the Appeals Council vacated ALJ Koennecke's decision of September 24, 2012, and remanded the case for further administrative proceedings (Appeals Council's "Second Remand Order"). (T. 574-80.)

### iii. Plaintiff's Consolidated Applications

On June 26, 2013, pursuant to the First Remand Order, Plaintiff appeared in a hearing before ALJ Edward I. Pitts. (T. 31-76.) On July 1, 2013, the Second Remand Order directed the ALJ to review Plaintiff's First and Second Applications and render a decision for the entire period at issue. (T. 574-80.) Accordingly, ALJ Pitts consolidated Plaintiff's First and Second Applications. (T. 440-41.) On August 8, 2013, ALJ Pitts issued a written decision finding Plaintiff not disabled under the Social Security Act from January 28, 2007 through August 8, 2013. (T. 436-461.) On February 25, 2015, the Appeals Council denied Plaintiff's request for

review, rendering the ALJ's decision of August 8, 2013, the final decision of the Commissioner. (T. 433-35.) Thereafter, Plaintiff timely sought judicial review in this Court.

    **C.**    **The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 443-56.) First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2011, and has not engaged in substantial gainful activity since January 28, 2007, the alleged onset date. (T. 443.) Second, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment, but that Plaintiff's mental impairments, right knee and right foot sprain, hypertension, and obesity were not severe impairments under the regulations. (T. 443-47.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 447.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[2] except he needs to change positions from sitting to standing or vice versa once every hour. When the claimant is changing positions, however, this is a matter of more or less stretching, he can remain at the workstation and remain on task. He has occasional postural limitations and [can perform] only occasional pushing and pulling with the lower right extremity. He needs to avoid concentrated exposure to extremes of temperature, vibration, humidity, respiratory irritants, and workplace hazards. When he is walking on rough and uneven ground or going up and down stairs, he needs to use a handheld assistive device, such as a cane.

---

[2]    Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10, 1983 WL 31251 (1983).

4

(T. 447-54.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 454.) Sixth, and finally, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 454-55.)

### D. The Parties' Briefings on Their Cross-Motions

#### i. Plaintiff's Motion for Judgement on the Pleadings

Generally, Plaintiff asserts six arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that his back injury is a severe impairment under the regulations. (Dkt. No. 18, at 1 [Pl.'s Mem. of Law].) Second, construed liberally, Plaintiff argues that the ALJ erred in weighing the opinions of treating physicians Ifechukwude Ojugbeli, M.D., and Supriya Oberoi, M.D., which indicate that he is unable to perform the exertional requirements of sedentary work. (*Id.*, at 2-3.) Third, construed liberally, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. (*Id.*, at 2.) Fourth, Plaintiff argues that he does not have the RFC to perform any of his past relevant work. (*Id.*, at 3.) Fifth, and finally, Plaintiff argues that he does not have the RFC to perform other jobs existing in significant numbers in the national economy. (*Id.*)

#### ii. Defendant's Motion for Remand for Further Administrative Proceedings

Generally, Defendant asserts four arguments in support of her motion to remand for further administrative proceedings. First, Defendant argues that remand for further proceedings is appropriate because the ALJ's RFC finding is based on an incomplete analysis of the medical opinion evidence and, therefore, the Court will not be able to assess whether substantial evidence supports the ALJ's RFC finding and the Commissioner's overall disability determination. (Dkt.

No. 25, at 4-7 [Def.'s Mem. of Law].)  Second, Defendant argues that remand for an award of benefits is not warranted because the record evidence does not compel the conclusion that Plaintiff is disabled under the Social Security Act.  (*Id.*, at 7-9.)  Third, Defendant argues that Plaintiff's allegation of bias by the ALJ points to no record evidence to support his argument.  (*Id.*, at 9.)  Fourth, and finally, Defendant argues that while the additional evidence submitted by Plaintiff does not constitute new and material evidence, it would nonetheless be included in Plaintiff's file upon remand for further administrative proceedings.

### iii.    Plaintiff's Response to Defendant's Motion

Generally, Plaintiff's asserts two arguments in his response to Defendant's motion to remand this matter for further administrative proceedings.  First, Plaintiff appears to argue that the Defendant's motion overlooked that (1) multiple other physicians (not addressed in Defendant's brief) agreed that he has a serious medical condition and (2) Plaintiff has attempted multiple forms of treatment that have been unsuccessful in relieving his chronic back pain and weakness in his right leg (including physical therapy, nerve block procedures, pain medication, and working with home therapy equipment).  (Dkt. No. 27, at 1[Pl.'s Mem. of Law].)  Second, and finally, Plaintiff appears to argue that the Commissioner's decision was biased.  (*Id.*, at 1-2.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether the ALJ Step Two Determination Regarding Plaintiff's Back Injury Was Supported by Substantial Evidence

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012); *Kemp v. Comm'r*, 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011).

When "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity")

Plaintiff argues that his back injury (including an annular tear at L3-4 and a large central disc herniation at L4-5 encroaching on the thecal sac and causing moderate bony stenosis and radiculopathy in the right leg) causes low back pain with radiation into his side, calf and ankle; a buckling sensation in his back; and numbness in his right leg that limit his ability to perform basic work activities. (Dkt. No. 18, at 1 [Pl.'s Mem. of Law].) While the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment, Defendant acknowledged that it is not clear whether the ALJ considered the October 8, 2012, MRI examination of Plaintiff's lumbar spine diagnoses of lumbar stenosis and lumbar radiculopathy (in addition to degenerative disc disease). (Dkt. No. 25, at 3.)

For the reasons set forth below in Part III.B. of this Decision and Order, this matter is being remanded for the ALJ to reevaluate the medical opinion evidence and Plaintiff's RFC based on the complete medical record. Upon remand, the ALJ should also consider the severity of Plaintiff's back impairments in addition to degenerative disc disease, and any other impairments as appropriate based on the complete medical record and any new medical evidence obtained.

### B. Whether the ALJ Erred in Assessing the Opinions of Plaintiff's Treating Physicians Dr. Oberoi and Dr. Ojugbeli

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 25, at 5-8 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . [a plaintiff's] impairment(s), including . . . [a plaintiff's] symptoms, diagnosis and prognosis, what . . . [a plaintiff] can still do despite impairment(s), and . . . [a plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The ALJ must consider opinions from acceptable medical sources, and may consider opinions from other sources, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. § 404.1513(a)(1)-(5) (identifying the five types of acceptable medical sources as: (1) licensed physicians, (2) licensed or certified psychologists, (3) licensed optometrists, (4) licensed podiatrists, and (5) qualified speech-language pathologists).

Under the "treating physician's rule," controlling weight is afforded to an opinion from a plaintiff's treating physician when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is not inconsistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(c); *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015), *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Greek,* 801 F.3d at 375; *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the frequency, length, nature and extent of the physician's treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. 20 C.F.R. § 404.1527(c); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (listing regulatory factors).

Here, the record contains multiple medical opinions of Plaintiff's work-related physical abilities and limitations, including the opinions of treating physicians Dr. Oberoi and Dr. Ojugbeli (discussed below in Part III.B.viii. and Part III.B.ix.) that Plaintiff argues are entitled to controlling weight.

### i. Treating Family Practitioner Kristen McNamara, M.D.

In February 2007, Dr. McNamara opined that, due to Plaintiff's right foot pain and lower back disorder, he should avoid standing for prolonged periods of time, lifting greater than 20 pounds, and required the ability to alternate between positions every 20 to 20 minutes. (T. 448.)

### ii. Independent Medical Examiner E. Robert Wilson, M.D.

In April 2007, Dr. Wilson reviewed Plaintiff's medical records and performed an independent medical examination of Plaintiff. (T. 174-77.) Dr. Wilson noted that Plaintiff reported pain in his back, right lower extremity, and right foot resulting from an accident in January 2007. (T. 117.) Dr. Wilson opined that Plaintiff could return to work that did not require lifting more than 20 pounds, walking and standing for more than 20 minutes uninterrupted, or repetitive bending. (T. 117, 448.)

12

### iii. Independent Medical Examiner N. Rehmatullah, M.D.

In September 2007, Dr. Rehmatullah opined that Plaintiff could perform work activity that did not involve lifting over 20 pounds, repetitive or sustained bending and lifting, and allowed him to sit and stand at his convenience. (T. 448). Upon examination, Dr. Rehmatullah observed that Plaintiff walked with a limp and had some tenderness and tightness in the lumbar area. (T. 449.) However, Dr. Rehmatullah also observed that Plaintiff could walk on his heels and toes without any difficulty, his upper and lower extremities were neurologically intact, and his right knee showed full mobility. (*Id.*)

### iv. Independent Medical Examiner Donald Paarlberg, M.D.

In May 2008, Dr. Paarlberg opined that Plaintiff could return to work but restricted him to no interaction with combative patients, no repetitive bending, and no heavy lifting over 20 pounds. (T. 448). Upon examination, Dr. Paarlberg observed that Plaintiff exhibited fairly good range of motion in his back, was able to perform heel and toe walking without any difficulty, and had a negative straight leg raising test on the left but a positive straight leg raising test on the right. (T. 449.)

### v. Treating Physiatrist Thomas Masten, M.D.

In March 2011, Dr. Masten opined that Plaintiff was "very limited" in his ability to walk, stand, sit, push, bend, lift, carry, climb stairs, and use public transportation. (T. 451.) Dr. Masten further opined that Plaintiff could lift/carry ten pounds occasionally, stand/walk for less than two hours and sit for less than six hours in an eight-hour workday, and should never perform postural activities except climbing. (*Id.*) Additionally, Dr. Masten indicated that Plaintiff was limited to lifting less than 15 pounds, walking for less than an hour, standing for less than an hour, and sitting for less than an hour. (*Id.*) On multiple occasions, Dr.

13

Masten indicated that Plaintiff was limited to less than sedentary work. (*Id.*)

### vi. Consultative Examiner Kalyani Ganesh, M.D.

In July 2008, Dr. Ganesh diagnosed Plaintiff with herniated disc of the lumbosacral spine and contusion of the right foot. (T. 311, 449-50.) Dr. Ganesh indicated that an x-ray examination of Plaintiff's spine showed discogenic disease at L4 to L5, but an x-ray examination of Plaintiff's right knee did not show acute fracture, dislocation or destructive bony lesion. (T. 311, 450) (referencing T. 313-14.) In sum, Dr. Ganesh opined that Plaintiff had a "mild to moderate" limitation in lifting, carrying, pushing, and pulling; but had no gross physical limitation noted to sitting, standing, or walking. (T. 311, 449.)

### vii. Consultative Examiner Tanya Perkins-Mwanutali, M.D.

In August 2011, Dr. Perkins-Mwanutali diagnosed Plaintiff with herniated disc in the lumbar region with chronic recurrent pain, and weakness in the right leg with a history of the right leg giving out and causing falls. (T. 1424.) Upon examination, Dr. Mwantuali observed that Plaintiff used a cane for ambulation; had tenderness to palpation at the lower lumbar region and paraspinal tenderness; had decreased range of motion of the lumbar spine, shoulders, and hip; and had diminished deep tendon reflexes bilaterally. (T. 451.) However, Dr. Perkins-Mwantuali also observed that Plaintiff had negative straight leg tests bilaterally; had full range of motion in the elbows, forearms, wrists, knees, and ankles; had stable and nontender joints; had no evidence of muscle atrophy; had four out of five strength in the lower extremities; and had intact hand and finger dexterity and full grip strength in his hands. (*Id.*) In sum, Dr. Perkins-Mwantuali opined that Plaintiff had "mild to moderate limitations" in bending, pushing, pulling, lifting, walking and standing. (T. 451, 1424.)

### viii. Treating Physician Dr. Oberoi

In December 2009, Dr. Oberoi provided an opinion of Plaintiff's work-related physical limitations due to lower back pain (lumbago) and history of degenerative disc disease. (T. 386-89.) Dr. Oberoi opined that Plaintiff could sit less than six hours, stand/walk less than two hours, and lift less than ten pounds occasionally[4] during an eight-hour workday. (T. 386-87.) Dr. Oberoi further opined that Plaintiff could occasionally climb, balance, kneel, crouch, and crawl; could never stoop; and had limitations in his ability to push/pull with the lower extremities. (T. 387.) Finally, Dr. Oberoi opined that Plaintiff could perform unlimited reaching in all directions, handling, fingering, and feeling with his fingers, and had no environmental limitations. (T. 388-89.)

### ix. Treating Physician Dr. Ojugbeli

In May 2013, Dr. Ojugbeli provided an opinion of Plaintiff's work-related physical limitations due to his pain and weakness in the legs. (T. 764-67.) Dr. Ojugbeli opined that Plaintiff could sit less than six hours, stand/walk less than two hours, and lift/carry ten pounds occasionally in an eight-hour workday. (*Id.*) Dr. Ojugbeli opined that Plaintiff could occasionally climb stairs; could never balance, kneel, crouch, crawl or stoop; and had limitations in his ability to push/pull. (T. 764-65.) Dr. Ojugbeli further opined that Plaintiff had limitations reaching in all directions, but could perform unlimited handling, fingering, and feeling with his fingers. (T. 766.) Finally, Dr. Ojugbeli opined that Plaintiff had limitations in his ability to be exposed to temperature extremes, vibration, humidity/wetness, and hazards. (T. 767.)

---

[4] The assessment form indicated that "occasionally" means occurring from very little up to one-third of an eight-hour workday (cumulative, not continuous). (T. 386.)

In determining Plaintiff's physical RFC, the ALJ afforded less than controlling weight to the opinions of treating physicians Dr. Oberoi and Dr. Ojugbeli. (T. 450-53.) However, a review his analysis of the opinion evidence indicates that it is unclear whether the ALJ reviewed the complete record. (*Id.*)

For example, the ALJ reasoned that he afforded "limited" weight to Dr. Ojugbeli's opinion, in part because it was contradicted by his own treatment notes that "characterized [Plaintiff's] lower back disorder as 'lumbago, which is not indicative of a disabling condition,'" and contained normal musculoskeletal and neurological findings. (T. 452.) However, as Defendant acknowledged, it is not clear whether the ALJ considered the October 2012 MRI examination of Plaintiff's lumbar spine and diagnoses including degenerative disc disease, lumbar stenosis, and lumbar radiculopathy. (Dkt. No. 25, at 3.)

As Defendant further acknowledged, while the ALJ correctly noted multiple normal physical examination findings in late 2012 and early 2013, it is not clear whether the ALJ also considered the multiple abnormal examination findings around that time (including weakness, numbness, diminished sensation to light touch, and depressed deep tendon reflexes in Plaintiff's lower right extremity; and Plaintiff's diminished lower extremity strength bilaterally, difficulty walking, and use of a cane to ambulate). (*Id.*, at 5-6.) The Court notes that an ALJ cannot selectively rely on the evidence from medical sources that supports a particular conclusion while ignoring the contrary evidence. *Bush v. Colvin,* 13-CV-0994, 2015 WL 224764, at *11 (N.D.N.Y. Jan. 15, 2015); *Royal v. Astrue,* 11-CV-0456, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (citing, *inter alia, Fiorello v. Heckler*, 725 F.2d 174, 175-76 [2d Cir. 1983]).

For these reasons, the Court finds that the ALJ erred in assessing the opinions of treating physicians Dr. Ojugbeli and Dr. Oberoi, and remand is required for the ALJ to

reevaluate the medial opinion evidence and Plaintiff's RFC based on a comprehensive review and analysis of the complete medical record. As appropriate, the ALJ may recontact Dr. Oberoi, Dr. Ojugbeli, and/or the other medical sources for clarification or to obtain additional information regarding their opinions. *See* 20 C.F.R. §§ 404.1520b(c)(1); 416.920b(c)(1) (providing that an ALJ may recontact a medical source for clarification or to obtain additional information). Because this matter requires remand for the ALJ to reevaluate the medical opinions and Plaintiff's RFC, the Court need not, and will not, address Plaintiff's arguments regarding subsequent steps of the sequential evaluation.

### C. Whether This Matter Should Be Reversed Without Remand

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 25, at 7-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner with or without remanding the case for a rehearing." *Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2002) (citing 42 U.S.C. § 405[g]). The Second Circuit has indicated that remand for further development of the record is warranted when there are gaps in the administrative record or the ALJ has applied an improper legal standard. *Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted). A remand for calculation of benefits is warranted "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris,* 626 F.3d 225, 235 (2d Cir. 1980); *accord, Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2002); *Rosa,* 168 F.3d at 83.

17

For the reasons discussed above in Parts III.A and III.B. of this Decision and Order, this matter requires remand for further administrative proceedings. The Court has considered whether the record provides persuasive proof that Plaintiff is disabled and answers this question in the negative in part for the reasons stated in Defendant's memorandum of law. More specifically, the Court finds that the record contains medical opinions suggesting that Plaintiff can perform at least some level of physical work activity, including the physical opinions of Dr. McNamara, Dr. Wilson, Dr. Rehmatullah, and Dr. Paarlberg discussed above in Part III.B. of this Decision and Order.

However, regarding the opinions of consultative examiners Dr. Ganesh and Dr. Perkins-Mwantuali discussed above in Part III.B. of this Decision and Order, the Court notes that both Dr. Ganesh and Dr. Perkins-Mwantuali opined that Plaintiff had "mild to moderate" limitations in various physical activities required to perform sedentary work. The Second Circuit has found that a consultative examiner's use of the terms "moderate" and "mild," without additional information, was so vague as to render the opinion useless in evaluating whether the plaintiff could perform the exertional requirements of sedentary work. *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) (superceded by statute on other grounds).

Upon remand, the ALJ may recontact Dr. Ganesh, Dr. Perkins-Mwantuali, or the other medical sources for clarification or to obtain additional information regarding their opinions. *See* 20 C.F.R. §§ 404.1520b(c)(1); 416.920b(c)(1). This may include recontacting Dr. Ganesh and/or Dr. Perkins-Mwantuali to obtain a more specific opinion of Plaintiff's physical limitations, including the amount of weight that Plaintiff can lift and carry, and how frequently, as well as the number of hours that Plaintiff could sit, stand, and walk during an eight-hour workday.

### D. Whether the ALJ's Decision Was Biased

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 25, at 9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The Court must start from the presumption that an administrative adjudicator, such as an ALJ, is unbiased. *Schweiker v. McClure,* 456 U.S. 188, 195 (1982). Moreover, the Court must presume that an administrative adjudicator, such as an ALJ, will exercise his or her decision-making authority with honesty and integrity. *Withrow v. Larkin,* 421 U.S. 35, 47 (1975). Here, Plaintiff's conclusory arguments that the ALJ's decisions and the proceedings before the Commissioner were biased are not supported by the ALJ's decisions, hearing transcripts, or any other document in the record. Therefore, relief on this basis is unwarranted.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. Nos. 18, 27) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for remand for further administrative proceedings (Dkt. No. 25) is **<u>GRANTED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: March 21, 2017
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge